IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Ebony Lowe,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 1:20-cv-3312 |
| | ) |
| **SBP Hospitality, Inc.,** | ) |
| **d/b/a District Chophouse & Brewery,** | ) |
| | ) |
| **SERVE ON:** | ) |
| **Superintendent of Corporations,** | ) |
| **District of Columbia** | ) |
| **Department of Consumer and Regulatory Affairs** | ) |
| **Business and Professional Licensing** | ) |
| **Administration** | ) |
| **Corporations Division** | ) |
| **Wells Fargo Bank** | ) |
| **7175 Columbia Gateway Drive** | ) |
| **Lockbox # 92300** | ) |
| **Columbia, MD 21046** | ) |
| **dcra.corp@dc.gov** | ) |
| | ) |
| **Defendants.** | ) |
| | ) **JURY TRIAL DEMANDED** |

**COMPLAINT**
**(Gender Discrimination & Retaliation)**

Pursuant to Federal Rule of Civil Procedure Rule 3, Plaintiff Ebony Lowe (hereafter "Plaintiff"), by her undersigned attorney, hereby files this Complaint.

**I. JURISDICTION AND VENUE**

1. This Court has jurisdiction of the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f).

2. Plaintiff initially contacted EEOC on or about August 2, 2019.

3. Plaintiff also initially contact DC Office of Human Rights on or about August 2,

2019 regarding her allegations.

    4. In or about May 5, 2020, Plaintiff filed a formal Charge of Discrimination in EEOC No. 570-2019-02879 with the EEOC and the DC Office of Human Rights.

    5. The EEOC accepted Plaintiff's formal Charge of Discrimination as timely.

    6. Defendant was duly notified about Plaintiff's administrative complaints and was given an opportunity to respond to Plaintiff's allegations.

    7. DC Office of Human Rights dismissed Plaintiff's complaint due to prosecutorial discretion on June 16, 2020, due to workshare agreement with EEOC and acknowledgement that Plaintiff's complaint had been timely filed with EEOC.

    8. On August 18, 2020, the EEOC made a decision on the merits of Plaintiff's

discrimination claims and issued her a Notice of Right to Sue, by regular mail.

9. This Complaint is filed within 90 days after Plaintiff received the Notice of Right to Sue on her EEOC complaint.

10. Plaintiff has exhausted the administrative remedies available to her under 42 U.S.C. §§ 2000e, *et seq.*, and all conditions precedent have occurred or been performed.

11. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c), as Defendants District Chophouse and SBP Hospitality (hereinafter "Defendant") has extensive and deliberate contacts in this District, including a business location in Washington, DC, at which Plaintiff performed work during her tenure with Defendant.

## II. THE PARTIES

12. Plaintiff is a resident of the District of Columbia and a former employee of Defendant, working in the District of Columbia.

13. Defendant is a private business operating the District Chophouse & Brewery restaurant located at 509 7th Street NW, Washington DC, presently owned and managed by SBP Hospitality.

14. District Chophouse & Brewery was owned by CraftWorks, Inc. during the time of Plaintiff's employment up until June of 2020.

15. CraftWorks, Inc. was acquired by SBP Hospitality, Inc. in June 2020.

16. SBP Hospitality's principal place of business is located at 3011 Armory Drive, Suite 300, Nashville, TN 37204.

17. SBP Hospitality presently has no resident agent in Washington, D.C.

## III. MATERIAL FACTS

18. On or about May 2019, Plaintiff interviewed for a job as Server at Defendant's District Chophouse restaurant in Washington DC.

19. Plaintiff observed that her interview with Stephone Bates, Manager, was slightly unprofessional.

20. Bates stated to Plaintiff that they already fired "too many pretty girls" working for the company and he, "did not want to hire another pretty girl who doesn't want to work hard".

21. Bates repeated this statement multiple times during the interview with Plaintiff.

22. Plaintiff explained that he would never have those issues with me because she was an experienced professional.

23. Plaintiff also mentioned that she was from Florida,

24. Bates responded by becoming very personal and stated that his wife was from Florida and how he hates her.

25. Plaintiff found this comment may have been unprofessional, and offensive.

26. Nonetheless, Plaintiff was hired as a Server at District Chophouse & Brewery.

27. Shortly after starting training for District Chophouse & Brewery, Plaintiff observed that Stephone would continuously approach Plaintiff, trying to strike up personal conversation regarding his wife, whom he stated, he "hates".

28. Plaintiff was reminded of Stephone's unprofessionalism during her interview, and became uncomfortable with being around him alone.

29. During Plaintiff's evening shift, she called Stephone "boss" - Stephone angrily responded, saying "Don't call me boss, that's what the slave owners use to have the slaves calling them."

30. On Plaintiff's May 18th morning shift between 3:00p - 4:00pm, Stephone engaged in another conversation making inappropriate remarks, attempting to compare Plaintiff's appearance with Plaintiff's mother, who Plaintiff had disclosed was visiting within the next couple of weeks.

31. While trying to avoid the awkward comments Stephone made, Plaintiff unintentionally called him "boss" again as she attempted to walk away.

32. Stephone responded by yelling, "I TOLD YOU NOT TO CALL ME BOSS. I'D RATHER YOU CALL ME DADDY OR SOMETHING."

33. Plaintiff was shocked and replied, ". . . so it's ok for you to get upset with me for calling you boss, but you would rather me call you daddy?"

34. Plaintiff further responded, "Exactly how is that work appropriate?"

35. The manager, Stephone Bates walked away.

36. In the following weeks, Plaintiff observed that interactions with Stephone were very awkward and Plaintiff felt harassed due to her Manager's constant aggressive hovering, and interjecting himself in conversations between Plaintiff and other employees.

37. Plaintiff's predicament became so noticeable that two veteran employees (Ceciley Thomas and Messina Wiseman) offered to advocate on Plaintiff's behalf to stop the Manager's behavior.

38. Messina shared with Plaintiff that she had witnessed Stephone's behavior to previous female employees and she was "sick of it".

39. However, once both women mentioned they were close to Stephone, Plaintiff refused their help and stated that she wanted it handled by management professionally due to the severity of the issue.

40. Around the end of May, Plaintiff decided to act on bringing these issues to management, although, she felt discernable fear about potentially losing her job.

41. Around the end of May, Plaintiff was approached by Jose Manzano (who was another server at District Chophouse and a previous manager) and Messina regarding the situation with Stephone.

42. Messina represented to Plaintiff that Jose could be trusted and has worked with Stephone for years, and explained that Jose was aware of Stephone's comments to Plaintiff due to Messina sharing the information without Plaintiff's knowledge.

43. Jose informed Plaintiff that he was familiar with Stephone having complaints from women working at the job.

44. Jose also explained to Plaintiff that Stephone had previously made unwanted advances on another employee, Victoria Mance, whom Jose was involved with romantically.

45. Plaintiff informed Jose that she did not want him to mention the situation to anyone and that she was waiting to talk to the general manager, Bill Roll.

46. A few days later during Plaintiff's morning shift, she was directed to receive a party of 18 for her evening shift at 7:30pm.

47. After Plaintiff set up for the party, Stephone came in for the evening shift that day and began to hover over me, but Plaintiff ignored his attempts at conversation.

48. Around 7pm, Stephone retaliated against Plaintiff by informing her that the party of 18 was cancelled.

49. Plaintiff observed that Stephone had lied, because the party of 18 still arrived at 7:30 and was served instead by Jose Manzano.

50. Plaintiff was also informed by the hostess, Lakishia, that Stephone gave the party to Jose at the last minute.

51. Due to having the party taken away, Plaintiff suffered financial loss from the missed opportunity at tips.

52. During the first week of June, Plaintiff learned via text message (to herself and several employees) that Manager Stephone Bates' had open criminal charges related to sexual assault and harassment.

53. Around this time multiple employees, women specifically, were sharing their experience from encounters with Stephone to Plaintiff.

54. These women included Leandra Banks, Corenna, Victoria Mance, Victoria Carrington, and Deonna Walker.

55. Up until this point, Plaintiff had been afraid of being fired for my refusal to Stephone Bates' unwanted advances – but the new information encouraged her to disclose her concerns with Manager Bill Roll.

56. A week later, Plaintiff spotted Bill at work and informed him of the situation.

57. Bill Roll and instructed Plaintiff to write a statement because he had already been aware of the complaints against Stephone.

58. On June 15th, 2019, Plaintiff submitted a statement to Bill Roll, stating as follows:

"To whom this letter may concern,

When hired I was under the impression that this was a great place to work , where I can build character, trust and longevity while continuing to build my business.

Everything about working at District Chophouse has been great except for one solid issue I have. Had I known I'd be working under a sexual predator, I might not have been so comfortable with my employment at District Chophouse. My previous jobs I've worked at, I've had to deal with sexual harassment and sexual predators making me highly uncomfortable at work. With me being a woman and not having a voice in a workplace of men superior to me. My complaints were either overlooked or not taken seriously.

In the early days of my training, Stephone would get highly irritated and snappy when I would call him boss. He mentioned it was a term used in slavery, and reminded him of the black men calling the slave owners "boss". Which is no problem[,] but then Stephone suggested I refer to him as "daddy" instead of "boss" and laughed, which immediately made me feel uncomfortable. Then while working shifts under his management, Stephone would hover aggressively to the point where other employees noticed and wanted to intervene.

On another shift during my first week out of training, I went down to checkout alone. Stephone grabbed my checkout and customer receipts, placed them on the desk, turned to a radio and began playing slow romantic music. I called my mother immediately and this has become my routine when I work a closing shift with Stephone. Anytime I wouldn't entertain his efforts to question me about my private life, I quickly noticed a change in his tone towards me.
While working a shift almost two weeks from today, I was informed I would receive a party of 18 at 7:30pm. I set up for this party by 4pm. Stephone came in for the evening shift and began to hover over me. After I continuously avoided his attempts at conversation, he noticed and stopped his attempts that evening. Around 7pm Stephone comes to inform me my party is cancelled. After checking with the host and noticing the sections next to me being set up for the same number of guests. I was informed that my party of 18 was taken from me last minute with no warning or reason and given to another server.

I've proven I'm more than capable of taking large parties so that should have never been an issue. The exact date of this particular incident came in the last week of May. A night shift between Tuesday 28th- Thursday 30th. I remember working with coworkers Jose, TJ, Emilio and the hostess Lakishia. Similar situations like these have occurred during his shift only. I enjoy my employment at District Chophouse, however this issue needs to be addressed.

Sincerely,
Ebony Lowe"

59. Plaintiff followed up with Bill a couple days later, and he informed Plaintiff that on June 26, 2019, he would find out information from the corporate office on Stephone's open felony charges regarding sexual offenses.

60. Bill also stated he would be speaking on Plaintiff's behalf regarding her written statement.

61. Unfortunately, weeks passed and Plaintiff did not receive any further information from Bill.

62. During these weeks, harassment from other employees, including Lydia and Leandra, started and continued during the weeks after Plaintiff's letter was initially sent.

63. An example of the harassment was Leandra making Plaintiff wait an excessive amount of time for guest alcoholic beverages, which would decrease the guest satisfaction.

64. Lydia would make it very difficult for Plaintiff to check out at the end of shifts.

65. Multiple employees including these two women stopped communicating with Plaintiff, which made the workplace very hostile for Plaintiff.

66. These employees would throw statements in the air around Plaintiff, stating comments verbatim (in a mocking manner) from Plaintiff's statement to Bill Roll.

67. Plaintiff was shocked and upset that the other employees had apparently learned of the contents of her statement to Bill Roll.

68. Plaintiff felt hurt and betrayed by Bill because I felt that he had let my letter get out into the restaurant and he had not handled the situation as guaranteed.

69. Plaintiff was also upset to find that management did nothing to disrupt Stephone's harassment and unwanted advances towards Plaintiff.

70. By July 1, 2019, Plaintiff's shifts with Stephone Bates had increased and she rarely saw Bill Roll.

71. During the evening of July 1, 2019, Hugh Jackman was performing at the Capitol One Arena. This caused Bill to stay while also having help from Terrance Covington (Bar manager) as the mid-day manager, on Stephone Bates evening shift.

72. While grabbing materials out of the server refrigerator, Stephone Bates' hand brushed past Plaintiff's rear-end while she was working on the food line.

73. Plaintiff found this action to be unwelcomed and she immediately jumped up asking him to say, "behind"(a term in the restaurant industry used when a colleague may come into close contact while moving past another employee) and if he could watch where he swung his hand(s).

74. At this time, Bill Roll approached to speak with Plaintiff about Stephone contacting Plaintiff's rear-end.

75. Bill asked if Stephone actually contacted Plaintiff's rear-end and she confirmed the incident occurred.

76. Bill then asked Plaintiff not to disclose the incident to anyone else because "it [would] cause [a] disruption."

77. Plaintiff, upset with the response, asked Bill Roll what did he expect her to do – Bill did not respond, he just walked off from the conversation.

78. The following day on July 2, 2019, Terrance told Plaintiff to try not to speak up on the problems in the restaurant because she was "drawing too much attention" by trying to fix the problems involving Stephone's widely-known harassment and behavior.

79. Throughout the month of July, the harassment from Plaintiff coworkers escalated in response to Plaintiff's complaint in June.

80. One particular employee, Lydia proceeded to harass Plaintiff non-stop by constantly telling management (primarily Stephone) that Plaintiff was not doing work properly.

81. The combativeness increased each time and Lydia would speak disparagingly toward coworkers about Plaintiff while Plaintiff was in the vicinity of these conversations.

82. On July 5, 2019, Plaintiff was on her way to check out as a part of the process to leave work. One of my closing duties was to restock the milk in the refrigerator.

83. However, Lydia insisted that Plaintiff could not leave unless there were three full milk jugs.

84. Once again Stephone was the manager on the shift and was involved. Stephone Bates did not resolve the situation at hand but stayed quiet and allowed the harassment to persist.

85. On July 6, 2019, Plaintiff was again harassed by Lydia regarding cleaning the server room and emptying the trashed. Plaintiff found this situation to be extremely frustrating, given that it was again coming from an employee closely connected with Stephone.

86. Neither had this been asked of anyone before, due to it being the expos job and trash. We all pull our own weight and help each other only when it is extremely needed and beneficial to the restaurant. So with this being asked of me, I had had enough of her consistently making my shifts hard for me to go home and adding more stress to working at District Chophouse & Brewery.

87. Plaintiff found herself frustrated to that point that she submitted a written statement to Craftworks EthicsPoint – the mechanism Craftworks used to monitor ethics complaints from employees. The statement to Craftworks EthicsPoint read as follows:

"To whom this may concern[,]
I'm writing a letter because I'm being harassed in the workplace by another employee named Lydia. I have made numerous complaints and have provided witnesses about this employee in regards to the harassment I endure and have endured from her."

88. Plaintiff asked management (Terrance and Stephone) for an employee harassment form.

89. Neither Terrance or Stephone After provided any assistance to Plaintiff in finding and completing an employee harassment form.

90. Manager Terrance proceeded to question Plaintiff's attempts at voicing her concerns with harassment and expressed that her complaints would not be taken into consideration by anyone.

91. The following week, Manager Terrance took adverse action against Plaintiff by removing her from the cocktailing server schedule.

92. Plaintiff suffered injury from Terrance's action in reduced income, and was under stress from these actions.

93. Despite Plaintiff having made two written complaints towards management and corporate offices, the pattern of harassment against Plaintiff at District Chophouse continued.

94. Plaintiff was subjected to harassment by being ignored, continually removed from cocktailing server schedules, and removed from preferred placements in active dining areas where servers received greater income.

95. Plaintiff also continued to be severely taunted by Leandra, including comments between Leandra and Stephone about the rear-end touching incident.

96. The continued harassment in July was witnessed by multiple employees at District Chophouse, as these actions were blatantly done in the open, in an effort to intimidate Plaintiff against continuing her statutorily protected activity in raising complaints to management.

97. Specifically, on or about July 17, 2019, Plaintiff was confronted by Leandra about allegedly leaving an apron in the area that Leandra was responsible for cleaning.

98. Leandra proceeded to threaten to injure Plaintiff over this alleged incident.

99. Ashanti Pendleton and Bryan Pike witnessed the incident described above on or about July 17, 2019.

100. Despite being encouraged to diffuse the situation, Manager Stephone Bates did nothing to interrupt Leandra's behavior towards Plaintiff.

101. Leandra continued to threaten Plaintiff throughout late July 2019, despite Plaintiff's attempts to have Manager Stephone Bates and General Manager Bill Roll intervene.

102. Plaintiff alleges that management refused to intervene as part of a pattern of retaliation against Plaintiff for her protected activity originating back in June of 2019.

103. Multiple witnesses, including Jose Manzano and Victoria Mance, observed the incidents of harassment and management's lack of action in late July 2019.

104. Manager Stephone Bates and Leandra even engaged in mocking Plaintiff about her sexual harassment complaints by stating that she "claims everything is sexual harassment. Haha, oh you touched me, sexual harassment."

105. Plaintiff was unlawfully terminated from employment with District Chophouse on July 30, 2019.

106. District Chophouse alleged that Plaintiff was terminated for engaging in disruptive arguments with colleagues, including Leandra.

107. However, this rationale was pretext for being fired, because similarly situated employees (including but not limited to Emilio and Michael Asgedom) engaged in arguments at District Chophouse over the same time period and were not recipients of such adverse action.

108. Stricken with grief over the wrongful termination, Plaintiff attempted to send a third statement to District Chophouse describing the harassment she was subjected to.

109. The content of Plaintiff's statement is included below:

"Hi my name is Ebony Lowe, I am as of July 30th a former employee of district Chophouse and Brewery for the fact of being wrongfully terminated.

According to my manager, I have been fired for threatening another employee. I was told that 5 witnesses plus a guest heard me say, "we can go outside so I can beat your ass". Only that is a false statement. This employee, Leandra Banks has continued to threaten me on a daily basis. I have dates and notations of my interactions with her. She has threatened me and told me she cannot get fired, due to the manager, " Stephone Bates" having contradicting and unprofessional text messages from him on her phone. This is not the only harrassment I have seen at this job. I have already reported to you all that the manager Stephone Bates had sexually harassed me on multiple occasions during my first month. No action by you all was done. After that, there was a stint of about 4 weeks of him using his management position to manage my restaurant income. After my initial complaint about him, all of the employees in the restaurant knew about it and he, Stephone Bates even joked about it with my coworkers. I was consecutively being put in the smallest section in the restaurant, while new servers with less experience than I have were being put in nicer sections. This was only a problem on Stephone Bates' working shift. I'm well aware of his pending

sexual offender cases. He's shown his disgusting ways several times with other woman and young girls that are guests in the restaurant. I have been told by the manager Terrance that, "I'm like the civil rights activist of district Chophouse". He said that I am too vocal on the issues within the restaurant. I have been trying to hold on strong while working here regardless of the harassment I've received from the staff and managers at district chophouse and Brewery. I have been told multiple times that I'm the star in the restaurant and that my guests love me yet as you can see, none of that shows. Most of the events that I have been penalized for have happened on Stephone Bates' shift. Today on July 30th, I was fired after 3 days of being off from work. I never had a chance to defend myself in this case. I was never called, and I have never been written up. Today was the first day I was approached about the incident even though I worked for 2 shifts right after the incident. I worked with my general manager once during those days after."

## IV. Statement of Claims

### Count I: Sex Discrimination

110. Plaintiff adopts and incorporates by reference ¶¶ 1-109 above.

111. Defendant unlawfully discriminated against Plaintiff on the basis of her sex in violation of Title VII.

112. Employees of the Defendant specifically made discriminatory statements regarding Plaintiff's sex.

113. Plaintiff was also subjected to repeated unwanted advances from Defendant's employee, Stephone Bates.

114. Despite putting Defendant on notice of the discriminatory and unwanted behavior, Plaintiff continued to be subjected to discriminatory harassment.

115. Defendant failed to intervene and investigate the allegations.

116. Following the comments, Complainant suffered adverse employment action when she was abruptly terminated from her employment in close temporal proximity to the complaints that she voiced to management.

117.   Plaintiff's similarly situated male counterparts were not subjected to such adverse action.

118.   As a result of Defendant's violation of Title VII, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## Count II: Retaliation

119.   Plaintiff adopts and incorporates by reference ¶¶ 1-118 above.

120.   Defendant unlawfully discriminated against Complainant when Defendant retaliated against Complainant for taking protected activity by ignoring her activity.

121.   Ultimately, Plaintiff suffered adverse action in the disruption of her work schedule, continued harassment activity from management, and ultimately, her unlawful termination on July 30, 2019.

122.   As a result of Defendant's violations of Title VII and retaliation, Complainant has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## V. REMEDIES SOUGHT

123. WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment granting him the following relief from Defendant:

   a. A declaratory judgment that defendant discriminated against Plaintiff, as alleged herein in Counts I and II;

   b. Back pay, including without limitation other lost benefits due to Defendant's discrimination against Plaintiff;

   c. Compensatory and punitive damages, pursuant to Section 102 of the Civil

Rights Act of 1991, 42 U.S.C. §§ 1981a(a)(2), 1981a(b)(3)(A), for taking these actions with malice and bad faith;

d. Prejudgment and post judgment interest on all damages, on the lost compensation and compensatory damages;

e. Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1981a, 2000e-5(k); and

f. Such other and further relief as to the Court seems just and warranted.

## VI. JURY TRIAL DEMAND

124. Plaintiff requests a jury trial on all issues of fact and damages arising herein.

Respectfully submitted,

*/s/Matthew Hunter*

MATTHEW HUNTER (DC Bar No 1510741)
Simply Law, LLC
3 Bethesda Metro Center, Suite 700
Bethesda, MD 20814
T:  (202) 630-5123
matthew@simplylawllc.com
Attorney for Plaintiff